(Judge Allread, of the second circuit, sitting in place of Judge Kinder.)

JOSEPH MOTON ET AL. V. BERNARD DEWELL ET AL. (Two Cases.)

JOSEPH MOTON ET AL. V. GERHARD KISSENS. (Two Cases.)

1. PURCHASERS OF LAND FRAUDULENTLY SOLD BY TRUSTEE ARE SUCCESSORS OF TRUSTEES SO FAR AS LAND IS CONCERNED.

> An executor having purchased land in performance of a trust imposed by will, taking title in his name as executor, and afterwards in fraud on the trust conveyed the land to others, the absence of a successor to such executor as a party to an action to set aside deeds brought against such purchasers and their successive grantees is not a fatal defect, on demurrer, when it is alleged that title was taken by such purchasers and their successors with full knowledge of the trust and of the fraud; and such purchasers became *quasi* trustees and successors to the executor so far as the land in question was concerned.

**2. One Beneficiary of Joint Trust may Sue for All.**

In 1837 1 j a Virginia will a trust fund was created with direction to the executor to invest same in lands in a free state and to settle the slaves of testator thereon, and the executor having purchased lands in Ohio for the trust taking title in his name as executor, and before making such settlement and in fraud on the trust conveyed them to others, one or more of the now ex-slaves or their descendants may prosecute an action for themselves and the others similarly interested to set aside the deeds from the executor to the purchasers from him and successive deeds.

**3. Unless Inconsistent with Whole Petition Special Averment must be Regarded as True on Demurrer.**

As against a demurrer, a special averment in a petition of want of notice and diligence as to discovery of a fraud as saving the action from the statute of limitations must be regarded as true unless the whole situation and admitted facts surrounding the case are inconsistent with such special averment.

**4. In Case of a Fraud on Cestui Que Trust, Limitation did not Begin until Fraud was Brought Home to Him.**

In 1846 legal limitations were not applied as between trustee and *cestui que trust* until after there had been an open repudiation of the trust brought home to the *cestui que trust*.

**5. Law of Another State is Presumed to be Same as Law of Ohio.**

In the absence of a showing otherwise, the law of Ohio is presumed to be the law of Virginia.

**6. Without Words of Succession Lands Purchased with Trust Fund Created by Will Descends to Heirs of Cestui Que Trust.**

Under a will probated in 1837 in which a fund was provided for the purchase, by the executor of lands for the slaves of testator, and Ohio lands were actually purchased for that purpose, the title being taken in the name of the executor as executor, the interest of such slaves in such lands is one in fee simple and descends to their descendants even in the absence of words of succession.

Error to Mercer common pleas court.

*J. D. Johnson* and *W. E. Henderson*, for plaintiffs in error.

*J. W. Loree, P. E. Kenney* and *J. G. Romer,* for defendants in error.

**ALLREAD, J.**

The plaintiffs, Joseph Moton and York Ryal, bring these actions on behalf of themselves and the survivors and other descendants of ex-slaves of the late John Randolph, of Roanoke, Virginia, who died testate May 24, 1833, and whose will was on

Moton v. Dewell.

December 7, 1837, admitted to probate in the general court of Virginia at the capital.

By the provisions of the will John Randolph gave and bequeathed to all his slaves their freedom, and in addition gave to William Leigh, as executor of his estate, a sum of money not exceeding eight thousand dollars, or so much thereof as was necessary, to transport and settle said slaves in some other state or territory in the United States, giving to all above the age of forty not less than ten acres of land. By a codicil, three thousand pounds sterling, or about fifteen thousand dollars, was bequeathed to said executor as a fund for carrying into execution the will respecting said slaves.

The executor named duly qualified and entered upon the trust, raised the fund provided for this purpose, and on May 19, 1846, from the fund so raised purchased lands in Mercer county, Ohio, taking the title in fee simple in his own name as executor of said will.

Proceedings had been commenced in the general court of the state of Virginia at the capital for the purpose of releasing said slaves from the bondage of slavery, resulting on May 4, 1846, in an order for their release, and the granting of passports to another state. Shortly thereafter the slaves were transported by the executor from their domicile in Virginia to the southern part of the state of Ohio and from forty to sixty miles from the lands so purchased, and in a different county.

The executor on October 26, 1846, executed a power of attorney to Joseph Plunkett to sell and convey the lands in Mercer county, and the same were sold and conveyed by said attorney in fact, one tract in 1849, and the other in 1852. The deed to the executor, the power of attorney, and the subsequent deeds of the attorney in fact, were each recorded shortly after execution in the recorder's office in Mercer county. Resale of the lands by the executor was made without any order or authority of any court, and without the authority of the will.

It is averred in the third amended petition, upon which the case now stands, that the executor did not settle said slaves or any of them upon the lands so purchased, nor did he give said slaves any land, money or property in lieu thereof. The

Mercer County.

amended petition contains charges of fraud against the executor in the resale of the lands, extending to the suppression of all knowledge from the liberated slaves and their descendants and the concealment of their rights; that the purchasers from the executor and their successive grantees down to the present owners took the property with full knowledge of the trust and of the fraud, and also aided in the concealment from the slaves and their descendants of all knowledge of their rights. It is also averred that the ex-slaves were illiterate, ignorant, could neither read nor write, and that neither they nor their descendants had any knowledge of the will, its terms and conditions, the purchase of lands for their benefit, of the acts, proceedings, etc., of the executor or of the fraud, and no means of knowing, and could not and did not discover the facts or their rights until about the time suit was brought.

A demurrer was presented and sustained by the court of common pleas to the third amended petition, containing the facts above stated, and final judgment rendered against the plaintiffs, who, by a petition in error, here seek to have the judgment reversed.

Various grounds are urged and reasons advanced in support of the demurrer. Counsel, both in oral and written argument, have shown extraordinary interest, research and ability pro and con.

It is contended that a successor to William Leigh, as executor, should be appointed in the courts of Virginia and made party here. We think that the absence of a successor to William Leigh is not a fatal defect, for, under the facts stated and admitted by the demurrer, the purchasers became quasi trustees and successors so far as the real estate in Mercer county is concerned to the executor.

So, also, we are of the opinion that one or more of the ex-slaves or their descendants may bring and prosecute the action for themselves and the others similarly interested. Joseph Moton is averred to be a descendant of slave parents over forty, and York Ryal, a descendant of a slave mother under forty years at the death of Randolph. Each class of slaves referred to in the provisions of the will is therefore represented.

Moton v. Dewell.

When the executor, after having invested the funds, failed further to execute the trust by settling the slaves thereon, and conveyed the land to a purchaser who took with full knowledge, the ex-slaves had the right, in due time, to appeal to a court of equity in the jurisdiction of the land to declare and enforce the trust created by the will and impressed upon the lands by investment of the funds specially raised and set apart. And inasmuch as the interests could only be assigned in severalty by the act of settling the slaves and making the allotments, the right to bring the suit is joint.

While broad discretion was confided by the terms of the will in the executor as to the manner of carrying out the benevolent object and purpose, yet the direction to purchase lands in another state or territory and to transport and settle the slaves, giving the elder class at least ten acres, and to employ so much of the funds provided as was necessary, was imperative. The right to give or withhold as to the main objects did not rest in the discretion of the executor but was conferred by absolute devise. Such bequest is therefore capable of enforcement by a suit in equity, unless the right thereto is lost by laches or limitation.

The plaintiffs rely upon their want of knowledge and the fraudulent concealment of the executor to relieve the bar of the statute of limitations. On the other hand, the defendants contend that, notwithstanding the averments of the petition that the slaves and their descendants had no knowledge and could not have discovered the facts upon which their right is founded, yet the court will be forced to conclude from the general situation and common knowledge of the race and class of persons involved that they did know or could by reasonable diligence have discovered in due time to bar the action, the facts necessary to their cause. This inference, as counsel contend, is based upon the intimate knowledge and acquaintance which must be assumed of the slaves with John Randolph and his benevolent purpose during life, upon the report and reputation following his death and publication of his will during the thirteen years of domicile on the old plantation in Charlotte

### Mercer County.

county, Virginia, of the pendency of the proceedings to probate the will, the release of the slaves from bondage with all the attendant agitation and discussion, upon their manumission, the dissolution of bondage, passports and transportation under provision of the executor into a free state and almost within sight of the land provided for, where it may be assumed they settled, and where they and their descendants have lived for sixty years.

In the consideration of this contention it may be conceded that if the only rational deduction from the situation and admitted facts surrounding the parties is inconsistent with the special averment of want of notice and diligence as to discovery, the latter may be disregarded; but if not wholly inconsistent, the averments must be reconciled upon the demurrer. It can hardly be doubted that the Randolph slaves, although ignorant and unlettered, spread the news of their emancipation and repeated and handed down to posterity as tradition the oft told story of their journey to the land of freedom, but resort to common knowledge might reasonably lead to the conclusion that to the liberated slaves their freedom was the chief thought—the priceless boon—about which clustered their fondest hope and highest aspiration, and afforded undoubtedly the chief topic of discussion. But it does not clearly and necessarily follow that, emerging from the condition of slavery and with little, if any, knowledge of property or property rights, ignorant and unable to read, the slaves knew, discussed or imparted to their descendants any knowledge of their property rights, although such rights are conferred by the same instrument which granted their freedom. It is specially urged that the proceedings of the general court of Virginia for their emancipation and the judgment and passports resulting charged the slaves with knowledge of the provisions of the will and of their rights. It does not, however, either expressly nor as a necessary inference, appear that the slaves instituted the suit or were parties. A slave might in some of the slave states have maintained a suit against the person claiming his bondage. *James* v. *Walker*, 57 Ky. (18 B. Mon.) 605.

Moton v. Dewell.

A more appropriate suit would have been on behalf of the executor to confirm the manumission provided in the will, and as the proceedings here were in the court probating the will and administering the estate, and not at the domicile of both the slaves and the executor, the inference in support of the theory of the executor having brought the suit is strengthened.

The inference of knowledge of property rights by the ignorant slaves from the judgment of the court resolving the bondage, their passports and journey into the free state, is by no means conclusive so as to overcome other positive averments admitted by the demurrer.

It is still further contended that the amended petition does not allege that the descendants of the slaves are ignorant or illiterate, and that, therefore, their knowledge of property rights from lapse of time and proximity of residence must be conclusively presumed. But it will be noted that about fifty of the John Randolph slaves were still living when the suit began, and as to descendants of those deceased, it does not appear that they were in such contact with the stirring events of their ancestors' emancipation and exodus as to lead to a necessary inference of knowledge of their property rights. The only means of knowledge necessarily inferred from the state of facts contained in the petition lay with their ancestors who cannot be held to have transmitted greater information than they possessed. The petition does not inform us of the date of the death of any of the ancestors, and we cannot, therefore, from the petition determine as to the beginning of the tolling of the statute of limitations as to any of the descendants.

The foundation of the present cause of action arises from the investment of the trust funds in the Mercer county lands, and specific knowledge of that fact cannot be deduced from any situation or set of circumstances shown in the petition, nor from any notice charged by law of the probation and contents of the Randolph will in the courts of Virginia in face of a distinct averment of the petition of want of knowledge or of opportunity for knowledge on the part of the ex-slaves and their descendants.

Mercer County.

It is contended by counsel for the plaintiffs that the trust created by the will of John Randolph and transferred to the successive grantees of the real estate is a continuing and subsisting trust, and thereby excepted from the present statute of limitations, but that is immaterial for the reason that the statute of limitations in force at the time the cause of action arose controls, and that under the prevailing practice at that time legal limitations were not applied as between trustee and *cestui que trust* until after there had been an open denial or repudiation of the trust brought home to the *cestui que trust*. *Paschall* v. *Hinderer*, 28 Ohio St. 568; *Ham* v. *Kunzi*, 56 Ohio St. 531 [47 N. E. Rep. 536].

It is also contended in support of the demurrer that the executor having bought the land and taken the title in his own name had an absolute right to convey and restore thereby the funds to its original form and that the rule requiring specific authority of the court or will does not apply. The effect of such conveyance as to an innocent purchaser need not be determined for here the amended petition charges the successive purchasers with knowledge of the trust, and they are, therefore, bound by the trust.

It is argued that there is no sufficient showing or statement of facts as to fraud, but the averments showing breach of trust, intent to defraud, and fraudulent concealment are sufficiently broad and specific to pass the test of a general demurrer.

It is asserted that the provisions of the Randolph will were personal to the slaves and that the right did not descend. The act of March 3, 1834, (1 Curwen 145), first brought into the statutes the rule of construction of wills averring the vesting of the estate in fee simple in the absence of words of succession. But independent of the statute, a devise was so construed even in the absence of words of succession. *Niles* v. *Gray*, 12 Ohio St. 320; *Platt* v. *Sinton*, 37 Ohio St. 353, 355; *Flickinger* v. *Saum*, 40 Ohio St. 591, 600.

This is the law of Ohio and is presumed to be the law of Virginia in the absence of a showing otherwise, and, therefore,

Moton v. Dewell.

controls, whether the construction of the will for the purposes of this case be under the laws of either Ohio or Virginia.

Whether the term "settle" employed in the will is to be construed in harmony with plantation customs in slavery days and applied as a sort of tenancy by sufferance or in the more enlarged acceptation of the free states in which the investment was directed, it is not necessary to decide at this stage. The laws and customs of the state of Virginia, if competent at all to be engrafted upon the construction of the will, must be specifically pleaded and proven.

The investment of the funds in the real estate described and the taking of the title in the name of the executor impressed thereon a trust for the settlement of the slaves, and under the facts stated in the petition, the interest so conferred upon the slaves is one in fee simple.

The third amended petition, therefore, stating a good cause of action as against a demurrer, the judgment of the common pleas court should be reversed and the cause remanded with instructions to overrule the demurrer, and for further proceedings.

**Hurin, J.,** concurs.

**Donnelly, J.,** concurring:

I agree with the majority of the court that the third amended petition is good as against a demurrer, but do not fully agree with the reasons given by the majority of the court.